B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS<br>BARBARA ANN JOHNSTON | DEFENDANTS<br>JPMorgan Chase Bank, NA |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br># N/A | ATTORNEYS (If Known)<br>Stephen J Baum, PC |
|---|---|

| PARTY (Check One Box Only)<br>☑ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor    ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Defendant lacks standing pursuant to 11 U. S. C. A. 362(d); Fed. Rules Bankr Proc. Rules 4001, 7017, 9014, 11 U. S. C. A.; Rule 17 of the federal Rules of Civil Procedure, at that Joinder of the owner of the note is required by Rule 19. Plaintiff seeks recovery of property interest as an entitlement holder in financial assets held by securities intermediaries as an adverse claim under UCC 8-105 & UCC 8-503.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- ☑ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☑ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
- ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

2011 FEB 10 PM 12:10
CLERK OF THE
U.S. BANKRUPTCY COURT
N.D. OF NY
ALBANY
REC'D & FILED

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>**BARBARA ANN JOHNSTON** | BANKRUPTCY CASE NO.<br>~~10-3508~~  10-13508 | |
| DISTRICT IN WHICH CASE IS PENDING<br>**NORTHERN DISTRICT OF NEW YORK** | DIVISION OFFICE<br>**ALBANY** | NAME OF JUDGE<br>ROBERT E. LITTLEFIELD |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>February 10, 2011 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>BARBARA ANN JOHNSTON | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In Re:  BARBARA A JOHNSTON

           Debtor.

Case No.: 10 – 13508
(chapter 13)

In Re:  BARBARA A JOHNSTON

           Plaintiff.

vs.

J.P. Morgan Chase Bank, NA

           Defendant.

Adv. Proc. No.: _____

COMPLAINT

2011 FEB -X 16 PH12:10    REC'D & FILED

CLERK OF THE BANKRUPTCY COURT N.D. OF NY ALBANY

Barbara A. Johnston (hereinafter: I, me), from the office of Executrix for the Legal Estate, BARBARA A. JOHNSTON (hereinafter: the Estate) alleges:

1. That there are issues of material facts as to whether the Promissory Note secured by the Deeds of Trust were ever funded by WASHINGTON MUTUAL BANK, FA, the alleged transferee of assets under the receivership of the FDIC after the Washington Mutual meltdown of 2008, or that the Promissory Note was perfected in securing the Estate's Real Property under the subject Deed of Trust.

2. WASHINGTON MUTUAL BANK, FA was required by U.S. PATRIOT ACT to reveal the source of the funds by filing Currency Transaction Reports, Currency and Monetary Instrument Transportation Forms CMIR's under §§ 5311 et seq. of 31 U.S.C. of THE BANK SECRECY ACT and 31 CFR § 103.11 regulations et seq., under the U.S. PATRIOT ACT and SEC Rule 17a-8, which applies to all broker-dealers, incorporates the requirements of the Bank Secrecy Act to file reports and maintain records showing the source of the funds that allegedly funded and perfected the Mortgage Loan Application, Promissory Note and securing the Estate's Real Property under the subject Deed of Trust.

3. That after a diligent search by the Executor office of the Estate, the Mortgagee's and Beneficiaries of record cannot be located and that Estate is entitled to a reconveyance and release of lien by this Court and Trustee's as a Recoupment under § 3305 of the Uniform

1

Commercial Code (hereinafter, UCC), and a claim of a property or possessory right in the instrument and its proceeds, including a claim to rescind negotiation and to recover the instrument or its proceeds under UCC § 3–306 as is outlined in 16 CFR § 433.2 below. ACC § 3305 (c): "an obligor is not obliged to pay the instrument if the person seeking enforcement of the instrument does not have rights of a holder in due course and the obligor proves that the instrument is a lost or stolen instrument." That Claimants have impaired the collateral by securitization of the loan documents at closing by selling both the Deeds of Trust and Promissory Notes under the Pooling & Servicing Agreements thus leaving the Mortgage Loans and Promissory Notes unsecured.

4.  That because of the failure of J.P. Morgan Chase Bank, NA (hereinafter, Defendant) to locate and join the Real Parties In Interest under the Pooling & Servicing Agreements in the 424b5 Prospectuses and 8-K Current Reports, under F.R.C.P. 19 (a), there are material, factual and legal issues as to subject matter and in persona jurisdiction under Rules 17(a)(3) and 12b (1)(2)(6) do to the lack of Ratification of Commencement by the Real Parties in Interest that needs to be addressed by this court and its trustees Sua Sponte as a threshold issue under Article 3 § 2 of the National Constitution and that this court should not granted a motion for relief of stay as a Party that seeks relief from automatic stay must be a "real party in interest." 11 U.S.C.A. § 362(d); Fed. Rules Bankr. Proc. Rules 4001, 7017, 9014, 11 U.S.C.A. In re Kang Jin Hwang 396 B.R. 757. Bkrtcy. C.D. Cal., 2008. October 29, 2008 :

> "Generally, a mortgage loan consists of a promissory note and security instrument, usually a mortgage or a deed of trust, which secures payment on the note by giving the lender the ability to foreclose on the property. Typically, the same person holds both the note and deed of trust. In the event that the note and the deed of trust are split, the note, as a practical matter becomes unsecured." Restatement (Third) of Property (Mortgages) § 5.4. Comment.

5.  I am requesting that you order the defunct Debtor in Bankruptcy Washington Mutual to produce a certified copy of the U.S. Informational Tax Forms 1096 and the accompanying 1099 OID and tax form 8300 for any cash payments over $10,000 as evidenced in the Court as the Certificated Security or Promissory Note. The 1099OID's will identify who the payor and the recipient of the funds or cash proceeds were under SFAS [Statement of

Financial Accounting Standards] # 95 and IAS [International Accounting Standards] # 7.6 containing the inflows and outflows of cash and cash equivalents on the Balance Sheet FR 2046 from securitization of the off-balance-sheet receivables and payables which identify both the source or principal from which the funds or cash proceeds were derived from.

6. I am conditionally accepting the Defendant's B 10 Claim, under UCC § 3-501 (2)(3), and upon going to and proof of the following claims and facts:

a. That the Defendant Exhibit the Original Loan Application, Title Documents, Deeds of Trust and Promissory Notes hereinafter "CONTRACTS", unaltered with original signatures.

b. That the defendant shows me identification and their written authority to act on behalf of or to do a presentment for payment on behalf of the Investors and Security Underwriters under the Pooling and Servicing Agreements as Investment Contracts under the Rule 424b5 Prospectuses and 8-K Current Reports as Official Documents of the Securities Exchange Commission as mandated by the UC C § 3-501 (2)(B).

c. That the defendant sign receipts for the instrument or promissory note as payment made at closing and in the Escrow Accounts under FASB 95 [Financial Accounting Standard Board] by the LEGAL ESTATE of BARBARA A JOHNSTON in full as accord and satisfaction under UCC § 3-311, by Securitization of the Deed of Trust and Promissory Note under the POOLING AND SERVICING AGREEMENTS and to surrender the Deed of Trust and Promissory Note to me as mandated by UCC § 3-501 (2)(C).

d. That the Defendant produce the Scheduling Balance Sheet RC-C showing loan and lease to financing receivables or assets and the RC-L Call Report evidencing Securitization of the Retail or Loan Sales Installment Contract as an Off – Balance Sheet Item under the POOLING AND SERVICING AGREEMENTS and the accounting ledgers for the above alleged Mortgage Loan bTransaction, to show that the Defendant's alleged transferee was in compliance with FASB [Financial

3

Accounting Standards Board] No. 95 Statement of Cash Flows and credited my payments as cash deposits and receipts as the Payor when the entries were made under § 1813(l)(1)1 of title 12.

7. I also want to see the 1099A as Acquisitions or Abandonment and 1099OID as Original Issue Discount issued as a Bond and Public Debt Instrument under §§ 1271-1288 of the 26 U.S.C.A. and the U.S. Informational Tax Return forms 1096 showing the Capital Transfers and Gain Taxes withheld and paid out as a Taxable Terminations by the Trustee's of the POOLING AND SERVICING AGREEMENTS under §§ 2511, 2603(2), 2611(a) of title 26 of the Internal Revenue Code, Otherwise this Court, Trustee's and Claimants are in possession of contraband upon which a lien has attached under § 6324 (C)(2) of title 26 of the Internal Revenue Code until the Capital Transfer Taxes are paid in full.

8. I want a copy of the RC-S CALL REPORT showing the Defendant's alleged transferee's Assets or Receivables that were sold or Securitized for the first and last quarters of the loan periods. Schedules RC-S should be completed on a fully consolidated basis. Schedules RC-S includes information on assets that have been securitized or sold and are not reportable on the balance sheet of the Report of Condition, except for certain on-balance-sheet retained interest-only strips (which are reported in item 2.a of this schedule), subordinated securities and other enhancements (which are reported in items 2.b and 9 and Memorandum items 3.a.(1) and (2)), and seller's interests (which are reported in items 6.a and 6.b).

9. I am in possession of Exculpatory Evidence under the 424b5 Prospectuses and 8-K Current Reports Mortgage Loan Contracts, hereinafter "Receivables" as the Debt/Obligations, under a Transfer and on time as is Servicing Agreement, to Investors, Certificate/Bondholders who upon the close of said sale, immediately transferred and assigned, without recourse, Their entire interest, including the security interest in the Receivables to Security Underwriters know as SIFMA [Securities Industry and Financial Markets Association] located in Zurich, Switzerland. These Receivables were then Securitized as part of a large pool of Receivables. Certificates were then registered and issued investors. By the Securitization and sale of these Receivables, the enforceability

4

of the original Receivables or Promissory Notes were lost. In order to demand the release of my property and have standing under F.R.C.P 17 (a), Defendant must show that it is the holder of the Promissory Notes under UCC §§ 3-301, 3-302 and 3-303:

> UCC §3-301. "Person entitled to enforce" an instrument means (a) the holder Of the instrument, (b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3309 or subdivision (d) of Section 3418. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

10. I am in receipt and possession of the defendant's and it's alleged transferee's, Rule 424B5 Prospectuses and 8-K Current Reports which establish and evidence the following indisputable facts:

   a.  That the Defendant and its alleged transferee was/are the SPONSORS and SERVICERS of the Mortgage Loan Installment Contracts, Deeds of Trust and Promissory Notes as Receivables and not the Owners or Original Lenders under the Mortgage Loan Installment Contracts.

   b.  That the Defendant and its alleged transferee sold and/or sell and assigned their entire interest in the Receivables to Depositors, under POOLING and SERVICING AGREEMENTS which are depicted in the Rule 424b5 Prospectuses and the 8-K Current Reports as a series of FLOW CHARTS.

   c.  That the Depositors then transferred and assigne their entire interest in the Receivables/Mortgage Loan Installment Contracts to the Certificate/Bondholders under the POOLING and SERVICING AGREEMENTS.

   d.  The Trusts/Special Purpose Vehicles (SPV's) then issue the notes to the Depositors under the Indenture Agreements and pledge the Receivables/Mortgage Loan Installment Contracts to the Indenture Trustee's, as

5

the Owner Trustee's under SPV Agreements. The Depositors then sell

the offered Notes to the Certificate/Bond holders and Security Underwriters .

11. Based on the above facts and the Securitization of the Deeds of Trust, Promissory Notes
as Receivables

and the Mortgage Loan Installment Contracts Defendant does not have enforceability rights

as an owner, holders or holders in due course under §§ 3-301, 3-302, 3-303, 3-309 and 3-418

of the UCC. Nor does the Defendant have delivery, possession or control of the Receivables

or the Mortgage Loan Installment Contracts, Deeds of Trust, Promissory Notes or Perfected

Security Interests under §§ 9-310-9-316 of the UCC, therefore the Defendant does not

have the right to request possession of the property claimed.

12. I am challenging the Defendant's authority to make presentments without dishonor on

behalf of the Real Parties In Interest under F.R.C.P. 17 (a) and 19 (a) for lack of joinder and

§ 3501 (2)(3) of the Uniform Commercial Code:

UC C § 3-501:

(2) Upon demand of the person to whom presentment is made, the person making
presentment shall (A) exhibit the instrument, (B) give reasonable identification and, if
presentment is made on behalf of another person, reasonable evidence of authority to
do so, and (C) sign a receipt on the instrument for any payment made or surrender the
instrument if full payment is made. (3) Without dishonoring the instrument, the party
to whom presentment is made may (A) return the instrument for lack of a necessary
indorsement, or (B) refuse payment or acceptance for failure of the presentment to
comply with the terms of the instrument, an agreement of the parties, or other
applicable law or rule.

*Rule 19. Required Joinder of Parties*
(a) Persons Required to Be Joined if Feasible.

(1) Required Party.

A person who is subject to service of process and whose joinder will not deprive the
court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing
parties; or

(B) that person claims an interest relating to the subject of the action and is so situated
that disposing of the action in the person's absence may:

6

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

(2) Joinder by Court Order.

If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

(3) Venue.

If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.

(b) When Joinder Is Not Feasible.

If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

　(A) protective provisions in the judgment;

　(B) shaping the relief; or

　(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for Nonjoinder.

　(c) Pleading the Reasons for Nonjoinder.

When asserting a claim for relief, a party must state:

(1) the name, if known, of any person who is required to be joined if feasible but is not joined; and

(2) the reasons for not joining that person.

(d) Exception for Class Actions.

This rule is subject to Rule 23.

13. The POOLING AND SERVICING AGREEMENTS in the Rule 424b5 Prospectuses and the 8-K Current Reports evidence or establish all four elements of an Investment Contract, this is evidenced by the fact that the promissory notes and security agreements contain all the elements, terms and substance of investment contracts and demand deposit agreements (1) an investment in a common venture (2) premised on a reasonable expectation of profits (3) to be derived from entrepreneurial or managerial efforts of others in the form of commercial transactions as outlined in REVES v. ERNST & YOUNG, 494 U.S. 56 (1990) & Perrysburg Twp. V. Rossford, 103 Ohio St. 3d 79 2004 – Ohio – 4362 following the Reves case cited below and "form was disregarded for substance and emphasis was placed on economic reality. An investment contract thus came to mean a contract or scheme for the 'placing of capital or laying out of money in a way intended to secure income or profit from its employment." State v. Gopher Tire & Rubber Co., 146 Minn. 52, 56, 177 N.W. 937, 938. "this definition was uniformly adopted by state courts to a variety of situations where individuals were led to invest money in a common enterprise with the expectation that they would earn a profit solely through the efforts of the promoter or of some one other themselves. " SECURITIES and EXCHANGE COMMISSION v. W.J. HOWEY CO., 328 U.S. 293 (1946), also United California Bank v. THC Financial Corp., 557 F.2d 1351 Formerly 349Bk42, 349Bk13 C.A.9. Haw., 1977 "Factors, none determinative, used to measure "risk" in applying the "risk capital" test for determining what is an "investment contract" and, hence, a "security," include: (1) time; (2) collateralization; (3) form of the obligation; (4) circumstances of issuance; (5) relationship between amount borrowed and size of the borrower's business, and (6) contemplated use of the funds. Securities Act of 1933, § 2(1), 15 U.S.C.A. § 77b(1); Securities Exchange Act of 1934, § 3(a), (a)(10), 15 U.S.C.A. § 78c(a), (a)(10) and not Mortgage Loan Installment Contracts, I am therefore objecting to and denying the authenticity of the signatures as forgeries do to the Misrepresentations and Fraud in the inducement and factum under UCC §§ 3-305 and 3-308 by the Defendant and its alleged transferee and §§ 901, 902, 1001-1004 of the Federal Evidence Code. The Defendant must produce the original Loan Mortgage Contracts, Deeds of Trust and the Promissory Note as Securities with original signatures.

"In the Securities Act the term 'security' was defined to include by name or description many documents in which there is common trading for speculation or investment. Some, such as notes, bonds, and stocks, are pretty much standardized and the name alone carries well settled meaning. Others are of more variable character and were necessarily

designated by more descriptive terms, such as 'transferable share,' 'investment contract,' and 'in general any interest or instrument commonly known as a security.' We cannot read out of the statute these general descriptive designations merely because more specific ones have been used to reach some kinds of documents. Instruments may be included within any of these definitions, as matter of law, if on their face they answer to the name or description. However, the **124 reach of the Act does not stop with the obvious and commonplace. Novel, uncommon, or irregular devices, whatever they appear to be, are also reached if it be proved as matter of fact that they were widely offered or dealt in under terms or courses of dealing which established their character in commerce as 'investment contracts,' or as 'any interest or instrument commonly known as a 'security. " The proof here seems clear that these defendants' offers brought their instruments within these terms." "was an offering of an "investment contract" within the meaning of that term as used in the provision of § 2(1) of the Securities Act of 1933 defining "security" as including any "investment contract," and was therefore subject to the registration requirements of the Act. Pp. S.E.C. v HOWEY 328 U. S. 294-297, 328 U. S. 299. Basic test for determining the existence of a security involves three elements: (1) an investment in a common venture (2) premised on a reasonable expectation of profits (3) to be derived from entrepreneurial or managerial efforts of others. Securities Exchange Act of 1934, § 1 et seq., 15 U.S.C.A. § 78a et seq. Goodman v. Epstein 582 F.2d 388 C.A.Ill., 1978.July 18, 1978 .

see also: United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 852, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975); phone call Pollack v. Laidlaw Holdings, Inc., 27 F.3d 808 C.A.2.N.Y.,1994

Mortgage participations were "notes," and thus, were "securities" for purposes of federal securities laws; motivation of sellers appeared to be to raise funds for its general business activities of making and servicing mortgages, instruments were obtained for buyers by their investment advisor as part of their investment portfolios, instruments allegedly were offered for sale to general investing public, and there were no risk-reducing factors making protection of federal securities laws unnecessary. Securities Act of 1933, § 2(1), 15 U.S.C.A. § 77b(1); Securities Exchange Act of 1934, § 3(a)(10), 15 U.S.C.A. § 78c(a)(10). Allen v. Lloyd's of London, 94 F.3d 923 C.A.4.Va., 1996 "Investment contract" means a contract, transaction or scheme whereby person (1) invests his money (2) in common enterprise and (3) is led to expect profits (4) solely from the efforts of others; further, this test is to be applied with an eye to the substance, meaning the economic realities of the transaction, rather than the names that may have been employed by the parties. Securities Exchange Act of 1934, § 14(a), 15 U.S.C.A. § 78n(a). See publication Words and Phrases for other judicial constructions and definitions.

UCC  § 3-308:

3308. (a) In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed

9

to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature. If an action to enforce the instrument is brought against a person as the undisclosed principal of a person who signed the instrument as a party to the instrument, the plaintiff has the burden of establishing that the defendant is liable on the instrument as a represented person under subdivision (a) of Section 3402.

(b) If the validity of signatures is admitted or proved and there is compliance with subdivision (a), a plaintiff producing the instrument is entitled to payment if the plaintiff proves entitlement to enforce the instrument under Section 3301, unless the defendant proves a defense or claim in recoupment. If a defense or claim in recoupment is proved, the right to payment of the plaintiff is subject to the defense or claim, except to the extent the plaintiff proves that the plaintiff has rights of a holder in due course which are not subject to the defense or claim.

14. The POOLING AND SERVICING AGREEMENT IN THE 424b5 Prospectus and the 8-K Current Report evidences or establish that the Defendant is trying to enforce the following contracts or agreements: Purchase Agreement, Pooling and Servicing Agreement, Trust and Indenture Agreements, which have not been memorialized or subscribed to by me under § 2-201 of the Uniform Commercial Code of the Statute of Frauds and which are unenforceable as they do not apply to the Estate.

15. Credit is not sufficient consideration to support a contract under Article 2 § 2-306 and Article 3 § 3-305 of Uniform Commercial Code.

2-306. (1) A term which measures the quantity by the output of the seller or the requirements of the buyer means such actual output or requirements as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable prior output or requirements may be tendered or demanded.

(2) A lawful agreement by either the seller or the buyer for exclusive dealing in the kind of goods concerned imposes unless otherwise agreed an obligation by the seller to use best efforts to supply the goods and by the buyer to use best efforts to promote their sale.

16. Defendant's and its alleged transferee's Mortgage Loan Contracts, Deed of Trust and Promissory Note violate § 8 of the National Bank Act of June 3, 1864, wherein only lawful money based on personal security may be a loan [see also title 12 § 24 paragraph 7 of the U.S.C.], so I am challenging the validity of any alleged debt and the source of the funds under Article 1 § 10 of the Constitution of the united states, in its entirety under the Fair Debt Practices Collections Act of title 15 § 1692 et seq. and title 31 § 5118 (d) (2) as the alleged Mortgage Loan Application, Deeds of Trust and Promissory Note violate Public Policy.

17. The above facts, evidence and documentation means the defendant's and its alleged transferee's documents, including but not limited to the Mortgage Loan Applications, Deeds of Trust and Promissory Note have been materially altered by endorsement which discharges the drawer and maker under §§ 3-407, 3-414 and 3-415 of the Uniform Commercial Code as Surety ship Defenses.

> 3-415. (a) Subject to subdivisions (b), (c), and (d) and to subdivision (d) of Section 3419, if an instrument is, an indorser is obliged to pay the amount due on the instrument (1) according to the terms of the instrument at the time it was indorsed, or (2) if the indorser indorsed an incomplete instrument, according to its terms when, to the extent stated in Sections 3115 and 3407. The obligation of the indorser is owed to a person entitled to enforce the instrument or to a subsequent indorser who paid the instrument under this section. (b) If an endorsement states that it is made "without recourse" or otherwise disclaims liability of the indorser, the indorser is not liable under subdivision (a) to pay the instrument.

18. That the U.S. Bankruptcy Court Northern District of New York (Albany) under Trust Case No. 10 – 13508 as a Court of Record and Public Trustee and the appointed Trustees have to addressed the issue of Standing under F.R.C.P. 17 (a) (3) (b) Sua Sponte as a Threshold Issue under Article 3 § 2 of the National Constitution and that J.P. Morgan Chase, NA have filed documents with this court establishing the following:

That the defendant submitted to this Court, the appointed Trustees and the U.S. Trustee's Office, Currency Transaction Reports, Currency and Monetary Instrument Transportation Forms CMIR's under §§ 5311 et seq of 31 U.S.C. of THE BANK SECRECY ACT under the U.S. PATRIOT ACT and SEC Rule 17a-8, which applies to all broker-dealers, incorporates the requirements of the Bank Secrecy Act to file reports and maintain records showing the source of the funds that allegedly funded and perfected the Mortgage Loan Applications, Promissory Notes and securing Petitioners Real Property under the subject a Deed of Trust. There are several sections that establish special measures that financial institutions must undertake. Section 311 requires the maintenance of records of the aggregate amount of all transactions that are made outside the U.S. in areas where money-laundering has been identified as a concern; that reasonable steps be undertaken by a financial institution to obtain and retain information on foreigners who gain a benefit of ownership of an account which is opened and maintained in the U.S., and yet who do not own the account itself (also known as beneficial ownership); and

that the financial institution identify any foreign customers who are authorized to use or route transactions through a payable-through account in the U.S. Section 314 adds regulations that attempt to foster cooperative efforts to deter money laundering. This was mainly done by ordering the U.S. Treasury and other agencies to create regulations that set out how information was to be shared,[4] and by allowing financial institutions to share information with other financial institutions when so allowed by the Secretary of Treasury. Section 327 makes it harder for bank holding companies or banks to merge or consolidate with another bank holding company if they have not got a good track record in combating money laundering activities, and also makes it harder for insured depository institutions to merge with non-insured depository institutions if the insured depository institution has a bad track record in combating money laundering activities. A number of sections (sections 312, 313, 319 and 325) deal with the forfeiture of goods if international terrorism or money laundering is suspected. To deal with problems of identifying those who undertake money laundering activities, section 326 of the subtitle was designed to make it harder to mask the identity of individuals or groups who perform transactions or open accounts in the United States. Under this section, the Secretary of the Treasury was given the task of prescribing regulations that set forth the minimum standards that financial institutions must undertake to verify the identity of customers who open accounts.[5] These rules became effective on June 9, 2003, although financial institutions had until October 1, 2003 to come into compliance.[6] The minimum requirements under the section require financial institutions to establish procedures to take reasonable and practicable measures to verify the identity of those applying for an account with the institution; [7] maintain records of the information used to verify a person's identity, including name, address, and other identifying information;[8] and to consult lists of known or suspected terrorists or terrorist organizations, provided to the financial institution by any government agency, to determine whether a person seeking to open an account appears on any such list.[9]When prescribing the regulations, the Secretary was ordered to take into account the types of accounts available to financial institutions, the various methods someone can use to open accounts, and the various types of identifying information available to the institutions.[10] Restrictions on accounts and foreign banks Section 313 prohibits foreign shell banks that are not an affiliate of a bank that has a physical presence in the U.S. or that is not subject to supervision by a banking authority in a non-U.S. country regulating the affiliated depository institution, credit union, or

foreign bank. The subtitle has several sections that prohibit or restrict the use of certain accounts held at financial institutions. Under section 312, financial institutions must undertake steps to identify the owners of any non-U.S. bank that is not publicly listed who have a correspondent account with them, along with the interests of each of the owners in the bank. It is expected that additional scrutiny will be applied by the U.S. institution to such banks to make sure they are not engaging in money laundering. They must also identify the nominal and beneficial owners of any private bank account opened and maintained in the U.S. by non-U.S. citizens and must undertake enhanced scrutiny of the account if it is owned by, or is being maintained on behalf of, any senior political figure where there is reasonable suspicion of corruption. Under section 319 any deposits into foreign banks are also considered to have been deposited into any interbank account the foreign bank may have in the U.S. Thus any restraining order, seizure warrant or arrest warrant may be made against the funds in the interbank account held at a U.S. financial institution, up to the amount deposited in the account at the foreign bank. Section 325 prohibits financial institutions from allowing clients to specifically direct transactions that move their funds into, out of, or through an internal bank concentration accounts — financial institutions are also prohibited from informing clients about the existence of such accounts and are not allowed to make any disclosure that may give customer a way of identifying such internal accounts. The section requires financial institutions to document and follow methods of identifying where the funds are for each customer in a concentration account that comingles funds belonging to one or more customers. The restrictions on concentration accounts were made because such accounts do not provide an effective audit trail for transactions, and this may be used to facilitate money laundering.

19. That the Defendant has met its burden under Bankruptcy Rule 4007 (a) to establish itself as a Creditor.

The defendant who has invoked federal jurisdiction must bear the burden of proving elements of standing.

[6] Elements of standing are not merely pleading requirements but, rather, are an indispensable part of the plaintiff's case, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, with the manner and degree of evidence required at successive stages of litigation.

At the pleading stage, general factual allegations of injury resulting from defendant's conduct may suffice to establish standing; in response to summary judgment motion, plaintiff can no longer rest on mere allegations but must set forth by affidavit or other evidence the specific facts which will be taken as true for purposes of summary judgment; at the final stage, those facts, if controverted, must be supported adequately by the evidence adduced at trial. Federal Rules Civil. Procedure Rule 56(e). 28 U.S.C.A.112 S.Ct. 2130  504 U.S. 555, 112 S.Ct. 2130, 34 ERC 1785, 119 L.Ed.2d 351, 60 USLW 4495, 22 Envtl. L. Rep. 20,913 (Cite as: 504 U.S. 555, 112 S.Ct. 2130).

We are obliged to examine standing *sua sponte* where standing has erroneously been assumed below. See *Steel Co.* v. *Citizens for Better Environment,* 523 U. S. 83, 95 (1998)[I]f the record discloses that the lower court was without jurisdiction this court will notice the defect, although the parties make no contention concerning it.) (quoting *United States* v. *Corrick,* 298 U. S. 435, 440 (1936)). But we do not examine standing *sua sponte* simply to reach an issue for which standing has been *denied* below exactly what petitioner asks that we do here. See, *e.g., Izumi Seimitsu Kogyo Kabushiki Kaisha* v. *U. S. Philips Corp.,* 510 U. S. 27, 31.32 (1993) *(per curiam)* (discussing this Courts Rule 14.1(a) and the heavy presumption against reaching threshold questions not presented in the petition for certiorari) (internal quotation marks and citations omitted).

Defenders of Wildlife, 504 U.S. at 559-61, 112 S.Ct. at 2136. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth, 422 U.S. at 498, 95 S.Ct. at 2205.   A plaintiff has standing when (1) she has suffered an injury in fact, (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely that the injury will be redressed by a favorable decision. Defenders of Wildlife, 504 U.S. at 559-61, 112 S.Ct. at 2136.   An "injury in fact" is an invasion of a legally protected interest that is concrete, particularized, and actual or imminent, not conjectural or hypothetical. Id. These three elements of standing are "an indispensable part of the plaintiff's case," and thus the plaintiff must support each element "with the manner and degree of evidence required at the successive stages of the litigation." Id. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.' " Id. at 561, 112 S.Ct. at 2137 (quoting Lujan v. National Wildlife Fed'n, 497 U.S. 871, 889, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990).

20. That Defendant has presented evidence that the debt is owed to them.

Special measures

After trial on the motion for relief from stay, and several rounds of briefing, the question remains: to whom is the debt owed (i.e., who owns the promissory note)? *See In re Gavin.* 319 B.R. 27. 31 (1st. BAP 2004) (same). The court denies the motion on two procedural grounds: Indy Mac Federal is not the real party in interest pursuant to Rule 17 of the Federal Rules of Civil Procedure, and the joinder of the owner of the note is required by Rule 19.

This matter is before the Panel on appeal from an order of the bankruptcy court granting Christopher Gavin's (the "Debtor") motion under FRCP 52 [FN1] and *29

14

dismissing the complaint filed by Premier Capital, LLC ("Premier"), seeking a determination of dischargeability under 11 U.S.C. § 523(a)(2)(A). The bankruptcy court's ruling was predicated on its findings and/or conclusions that Premier failed to establish under Bankruptcy Rule 4007(a) that it is a creditor entitled to seek a determination of the dischargeability of a debt under § 523(a)(2)(A) due to Premier's failure to supply evidence to overcome a fatal break in the chain of title to the Note which underlies Premier's cause of action. Upon consideration by the Panel, the Order of the bankruptcy court is AFFIRMED.

Holding: The Bankruptcy Appellate Panel, Votolato, J., held that alleged assignee of debtor's obligations on promissory note failed to satisfy burden of proving that it was in fact a "creditor," with standing to pursue cause of action to except such obligations from discharge. *See In re Gavin*, 319 B.R. 27, 31 (1st Cir. BAP 2004)

To proceed with its cause of action to except debt from discharge, nondischargeability complainant had burden of proving that it was creditor, with standing to pursue such a cause of action. Bankr. Code, 11 U.S.C.A. §§ 101(10), 523(a). *See In re Gavin*, 319 B.R. 27, 31 (1st Cir. BAP 2004).

21. That the Mortgage Loan Application as a Credit Transaction of Defendant's alleged transferee contains the Provisions mandated in 16 CFR § 433.2 to wit:

Title 16: Commercial Practices

*PART 433—PRESERVATION OF CONSUMERS' CLAIMS AND DEFENSES*

*§ 433.2 Preservation of consumers' claims and defenses, unfair or deceptive acts or practices.*

In connection with any sale or lease of goods or services to consumers, in or affecting commerce as "commerce" is defined in the Federal Trade Commission Act, it is an unfair or deceptive act or practice within the meaning of section 5 of that Act for a seller, directly or indirectly, to:

(a) Take or receive a consumer credit contract which fails to contain the following provision in at least ten point, bold face, type:

NOTICE:

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

or,

(b) Accept, as full or partial payment for such sale or lease, the proceeds of any purchase money loan (as purchase money loan is defined herein), unless any consumer credit contract made in

connection with such purchase money loan contains the following provision in at least ten point, bold face, type:

NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

[40 FR 53506, Nov. 18, 1975; 40 FR 58131, Dec. 15, 1975]

22. I am conditionally accepting the Defendant's B 10 Claim under § 3-501 (2)(3) of the Uniform Commercial Code  upon proof of the following claims and facts:

> a) That the Estate  was not the Originator or Sender of the first payment order in the funds transfer to defendant's transferee at closing  under § 4A104 of the U.C.C.
>
> b) That  the Estate did not deliver an instrument as an issue  under  §  3-105  (a)  of the Uniform Commerical  Code  to Defendant's alleged transferee and was not the issuer of the first funds transfer § 3105 (c) to Defendant's alleged transferee as the drawer/maker of the promissory note.
>
> c) That Article 8 does not control Article 3 & 4 under Applicability of § 4102 of the California Commercial Code.
>
> d) That  the Estate does not have an Adverse Claim under UCC § 8-105 and Property Interest as an entitlement holder in financial assets held by the securities intermediaries under § 8-503 of the Uniform Commercial Code at closing and who is not a person who has acquired  security entitlements by virtue of paragraph (2) or (3) of subdivision (b) of § 8-501, that the estate is not the entitlement holder and that the Defendant or its alleged transferee did not have notice of these claims at closing. That  Petitioner does not have an entitlement holder's property interest with respect to a particular financial asset as the Subject and Object of the Defendant and its alleged transferee under subsection (a) Which may be enforced against the securities intermediary only by exercise of the entitlement holder's rights under §§ 8-505 through 8-508.
>
> e) The Executrix Barbara A. Johnston, as the Special Occupant for the Executrix Office of the Legal Estate of the Decedent BARBARA ANN JOHNSTON, does not have possessory rights in and control over, the title and ownership of the Life Estate Property Personal, Real, Tangible and Intangible Hereditaments by virtue of this occupancy of the

16

Office of Executrix and claims a possessory, proprietary right in the security(s) or instruments(s) and their proceeds, including a claim to rescind its negotiation and to recover the security(s) or instruments and its proceeds under § 3-306 of the Uniform Commercial Code. Executr4ix by virtue of Occupancy of the Office of Executor has a claim in Recoupment under § 3-305 of the Uniform Commercial Code against the original Payee of the security(s)/instruments as her claim arises from the transaction that gave rise to the instrument but the claim of the Executrix may be asserted against a transferee of the security(s)/instruments only to reduce the amount owing on the security/instrument at the time the action is brought.

Uniform Commercial Code § 3-305 (3)

"A claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument; but the claim of the obligor may be asserted against a transferee of the instrument only to reduce the amount owing on the instrument at the time the action is brought. § 3305 (c) An obligor is not obliged to pay the instrument if the person seeking enforcement of the instrument does not have rights of a holder in due course and the obligor proves that the instrument is a lost or stolen instrument."

Uniform Commercial Code § 3-306 (3)

A person taking an instrument, other than a person having rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds. A person having rights of a holder in due course takes free of the claim to the instrument.

23. That the Defendant and the REMIC which is the subject and object of the Pooling and Servicing Agreement under the Rule 424b5 Prospectuses and the 8-K Current Reports has qualified as a Real Estate Investment Trust by providing evidence in the court record of Beneficial Ownership interest by 100 or more persons as outlined below in § 856 of 26 U.S.C. and that at least 95 percent (90 percent for taxable years beginning before January 1, 1980) of its gross income (excluding gross income from prohibited transactions) is derived from-- (A) dividends; (B) interest; (C) rents from real property; (D) gain from the sale or other disposition of stock, securities, and real property (including interests in real property and interests in mortgages on real property) which is not property described in section 1221(a)(1) and that the deductions for dividends equals or exceeds the sum of 90% of its investment taxable income for taxable year under § 852 (A) of 26 U.S.C.

17

§ 856. Definition of real estate investment trust

(a) In general.--For purposes of this title, the term "real estate investment trust" means a corporation, trust, or
association--

(1) which is managed by one or more trustees or directors;

(2) the beneficial ownership of which is evidenced by transferable shares, or by transferable certificates of beneficial
interest;

(3) which (but for the provisions of this part) would be taxable as a domestic corporation;

(4) which is neither (A) a financial institution referred to in section 582(c)(2), nor (B) an insurance company
to which subchapter L applies;

(5) the beneficial ownership of which is held by 100 or more persons;

(6) subject to the provision of subsection (k), which is not closely held (as determined under subsection (h));
and

(7) which meets the requirements of subsection (c).

(b) Determination of status.--The conditions described in paragraphs (1) to (4), inclusive, of subsection (a)
must be met during the entire taxable year, and the condition described in paragraph (5) must exist during at
least 335 days of a taxable year of 12 months, or during a proportionate part of a taxable year of less than 12 months.

26 U.S.C.A. § 856

I.R.C. § 856

Page 1

 (c) Limitations.--A corporation, trust, or association shall not be considered a real estate investment trust for
any taxable year unless--

(1) it files with its return for the taxable year an election to be a real estate investment trust or has made such election for a previous taxable year, and such election has not been terminated or revoked under subsection
(g);

(2) at least 95 percent (90 percent for taxable years beginning before January 1, 1980) of its gross income (excluding gross income from prohibited transactions) is derived from--

(A) dividends;

(B) interest;

(C) rents from real property;

(D) gain from the sale or other disposition of stock, securities, and real property (including interests in real
property and interests in mortgages on real property) which is not property described in section 1221(a)(1);

(E) abatements and refunds of taxes on real property;

(F) income and gain derived from foreclosure property (as defined in subsection (e));

(G) amounts (other than amounts the determination of which depends in whole or in part on the income or
profits of any person) received or accrued as consideration for entering into agreements (i) to make loans secured
by mortgages on real property or on interests in real property or (ii) to purchase or lease real property

18

(including interests in real property and interests in mortgages on real property);

(H) gain from the sale or other disposition of a real estate asset which is not a prohibited transaction solely

by reason of section 857(b)(6); and

(I) mineral royalty income earned in the first taxable year beginning after the date of the enactment of this subparagraph from real property owned by a timber real estate investment trust and held, or once held, in connection with the trade or business of producing timber by such real estate investment trust;

(3) at least 75 percent of its gross income (excluding gross income from prohibited transactions) is derived

from--

26 U.S.C.A. § 856

I.R.C. § 856

(A) rents from real property;

(B) interest on obligations secured by mortgages on real property or on interests in real property;

(C) gain from the sale or other disposition of real property (including interests in real property and interests

in mortgages on real property) which is not property described in section 1221(a)(1);

(D) dividends or other distributions on, and gain (other than gain from prohibited transactions) from the sale

or other disposition of, transferable shares (or transferable certificates of beneficial interest) in other real estate

investment trusts which meet the requirements of this part;

(E) abatements and refunds of taxes on real property;

(F) income and gain derived from foreclosure property (as defined in subsection (e));

(G) amounts (other than amounts the determination of which depends in whole or in part on the income or

profits of any person) received or accrued as consideration for entering into agreements (i) to make loans secured

by mortgages on real property or on interests in real property or (ii) to purchase or lease real property

(including interests in real property and interests in mortgages on real property);

(H) gain from the sale or other disposition of a real estate asset which is not a prohibited transaction solely

by reason of section 857(b)(6); and

(I) qualified temporary investment income; and

(4) at the close of each quarter of the taxable year--

(A) at least 75 percent of the value of its total assets is represented by real estate assets, cash and cash items (including receivables), and Government securities; and

(B)(i) not more than 25 percent of the value of its total assets is represented by securities (other than those includible under subparagraph (A)), (ii) not more than 25 percent of the value of its total assets is represented by securities of one or more taxable REIT, (iii) except with respect to a taxable REIT subsidiary and securities includible under subparagraph (A)--26 U.S.C.A.

I.R.C. § 856

(I) not more than 5 percent of the value of its total assets is represented by securities of any one issuer,

(II) not more than 10 percent of the total voting power of the outstanding securities of any one issuer, and (III) the trust does not hold securities having a value of more than 10 percent of the total value of the outstanding securities of any one issuer. A

real estate investment trust which meets the requirements of this paragraph at the close of any quarter shall not lose its status as a real estate investment trust because of a discrepancy during a subsequent quarter between the value of its various investments and such requirements (including a discrepancy caused solely by the change in the foreign currency exchange rate used to value a foreign asset) unless such discrepancy

exists immediately after the acquisition of any security or other property and is wholly or partly the result of such acquisition. A real estate investment trust which does not meet such requirements at the close of any quarter by reason of a discrepancy existing immediately after the acquisition of any security or other property which is wholly or partly the result of such acquisition during such quarter shall not lose its status for such quarter as a real estate investment trust if such discrepancy is eliminated within 30 days after the close of such quarter and in such cases it shall be considered to have met such requirements at the close of such quarter for purposes of applying the preceding sentence.

(5) For purposes of this part--

(A) The term "value" means, with respect to securities for which market quotations are readily available, the market value of such securities; and with respect to other securities and assets, fair value as determined in good faith by the trustees, except that in the case of securities of real estate investment trusts such fair value shall not exceed market value or asset value, whichever is higher.

(B) The term "real estate assets" means real property (including

interests in real property and interests in mortgages on real property) and shares (or transferable certificates of beneficial interest) in other real estate investment trusts which meet the requirements of this part. Such term also includes any property (not otherwise a real estate asset) attributable to the temporary investment of new capital, but only if such property is stock or a debt instrument, and only for the 1-year period beginning on the date the real estate trust receives such capital.

(C) The term "interests in real property" includes fee ownership and co-ownership of land or improvements thereon, leaseholds of land or improvements thereon, options to acquire land or improvements thereon, and options to acquire leaseholds of land or improvements thereon, but does not include mineral, oil, or gas royalty

interests.


(D) Qualified temporary investment income.--

26 U.S.C.A. § 856

I.R.C. § 856


24. Washington Mutual, Inc. ("WMI") was a savings bank holding company and the former owner of the defendant's alleged transferee Washington Mutual Bank which was the United States' largest savings and loan association Attila became the largest bank failure in US history. September 25, 2008 the United States office of thrift supervision (OTS) seized Washington Mutual Bank from Washington Mutual, Inc. And placed it into the receivership of the federal deposit insurance Corporation (FDIC). The OTS took the action due to the withdrawal of $16.4 billion in deposits, during a 10 day bank run (amounting to 9% of the deposits it had held June 3, 2008). The FBIC sold the banking subsidiaries (minus unsecured debt or equity claims) to the defendant, JPMorgan Chase, four $1.9 billion, which reopened the banks offices the next day as

J. P Morgan Chase branches. The holding company, Washington Mutual, Inc. Was left with $33 billion assets, and $8 billion debt, after being stripped of its banking subsidiary by FDIC. The next day, September 26, Washington Mutual, Inc. Filed for Chapter 11 bankruptcy in Delaware, where it is incorporated. Washington Mutual banks closer and receivership is the largest bank failure in American financial history. Before the receivership action it was the six – largest bank in the United States. According to Washington Mutual Inc.'s 2007 SEC filing, the holding company held assets valued at $327.9 billion that may have included the Estates note or certificates in a SPV.

25. A PURCHASE AND ASSUMPTION AGREEMENT was allegedly executed between the FDIC and JPMorgan Chase Bank. However, it appears that the assets assumed by the agreement are not controlled by the agreement but are currently under the control of the US Trustee in Bankruptcy.

26. June 18, 2010 the FDIC modified the agreement by extending a settlement until August 30, 2010. As that date approached the FDIC executed another extension until September 30, 2010.

27. On January 11, 2010 the United States Department of Justice, Office of the United States Trustee, district of Delaware, pursuant to Section 1102 (a)( 1) of the Bankruptcy Code, appointed a Committee of Equity Security Holder. On page 17 of the examiner's report issued on November 1, 2010, in addressing the Assumption Agreement, the examiner states that the agreement is not yet approved.

28. On November 1, 2008 the default establishment, Washington Mutual Bank, FA attempted to execute a loan modification as Washington Mutual bank, formerly known as, FA, with the Estate as the obligor/debtor and Washington Mutual Bank as the oblige/creditor.

29. On November 1, 2008 the defendant's alleged transferee Washington Mutual bank, FA, was Civilly dead. "When it Corporation becomes insolvent, it is so far Civilly Dead, that it's property may be administered as the trust–fund for the benefit of its stockholders and creditors. A court of equity, at the instance of the proper parties, will that make those funds trust–funds, which, in other circumstances, are as much the absolute property of the corporation, as any man's property is his. We see no reason why the disposal by a Corporation of any of its property should be

questioned by subsequent creditors of the Corporation, any more than a like disposal by an individual of his property should be so. The same principles of law apply to each." Graham v. La Crosse & M. R. 102 U. S. 148, 1880 WL 18935 U. S. 1880 October Term 1880.

**Wherefore,** the Plaintiff requests that;

1) the claim JPMorgan Chase Bank, FA the denied for lack of standing under Rules 17 and 19 of the Federal Rules of Civil Procedure and the corresponding rules of Bankruptcy Procedure, Rules 4001, 7017, 9014.

2)The plaintiff be reawarded a portion of the proceeds from the investment contract/polling in services agreement as and Adverse Claim under UCC § 8-105 and Property Interest as an entitlement holder in financial assets held by the securities intermediaries under § 8-503 of the Uniform Commercial Code as a person who has acquired security entitlements by virtue of paragraph (2) or (3) of subdivision (b) of § 8-501, that the estate is third-party entitlement holder by operational law in the mortgage securitization scheme. As the Defendant qualifies as securities intermediary in that it has allegedly acquired all of the interests of the defunct Washington Mutual Bank, FA, it now has actual and constructive Notice of An adverse claim under §§ 8-102 (a) (1) and 8-105 of the Uniform Commercial Code.

_____

Executrix for Office of Decedent

22